

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JOSE COVARRUBIAS-GONZALEZ,<br><br>*Defendant.* | Case No. 1:22-CR- 139 |

## STATEMENT OF FACTS

The United States and the defendant, Jose Covarrubias-Gonzalez, agree that the following facts are true and correct, and that had this matter proceeded to trial, the United States would have proven them beyond a reasonable doubt with admissible and credible evidence:

1. From at least in and around June 2021 through May 2022, in the Eastern District of Virginia and elsewhere, the defendant, Jose Covarrubias-Gonzalez, did unlawfully, knowingly, and intentionally conspire with others to unlawfully, knowingly, and intentionally distribute 500 grams or more of a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(a)(1), 841(b)(1)(B), and 846.

2. During the course and in furtherance of these offenses, the defendant personally distributed, or it was reasonably foreseeable to him that his co-conspirators distributed, at least 500 grams but not more than 2.5 kilograms of a mixture and substance containing a detectable amount of cocaine.

3.     The defendant's co-conspirator, Isidro Duran-Velazco, was an ounce-level cocaine dealer who distributed his product in and around Fauquier County, which is within the Eastern District of Virginia. Duran-Velazco had several customers, including Esequiel Flores-Chavez. The defendant was one of Duran-Velazco's suppliers.

4.     In and around June 2021, a confidential source ("CS-1") working on behalf of law enforcement started purchasing cocaine from Flores-Chavez, who was sourcing the cocaine from Duran-Velazco. This happened on three occasions, as set forth below:

| Buy Date   | Quantity   | Purchase Price |
| ---------- | ---------- | -------------- |
| 6/28/2021  | 4.5 ounces | $9,000         |
| 7/21/2021  | 5 ounces   | $9,000         |
| 8/31/2021  | 2 ounces   | $3,600         |

Each of these controlled purchases occurred in and around Marshall, Virginia, within the Eastern District of Virginia.

5.     On or about November 28, 2021, Duran-Velazco and the defendant spoke on the phone; Duran-Velazco advised the defendant that Duran-Velazco would need "seven" ounces of cocaine for the following Wednesday, and "one" ounce for "right now." The next day, Duran-Velazco and the defendant spoke on the phone again, this time regarding the quality of the cocaine that the defendant had distributed to Duran-Velazco the day before.

6.     In this conversation, Duran-Velazco stated, "The guy [his customer] says it didn't come out the same as the other one." The defendant responded, "It's the same one," meaning that it was the same quality of cocaine the customer had purchased on a prior occasion. Duran-Velazco replied, "I told him. He says it isn't. He said, 'No, dude,' he said, 'No, no, no . . . The efficiency is not the same.' He said, 'It came out bad, it comes out bad.'"

7. On or about Wednesday, December 1, 2021, another confidential source working on behalf of law enforcement ("CS-2") arranged to purchase approximately seven ounces of cocaine from Duran-Velazco. This was the cocaine the defendant referenced in his conversation with the defendant on November 28, when Duran-Velazco stated that he needed "seven" for "Wednesday." An uncharged co-conspirator ("UCC-1") arrived to deliver the cocaine. CS-2 got into the front passenger's seat of UCC-1's vehicle, and UCC-1 distributed approximately seven ounces of cocaine to CS-2 on Duran-Velazco's behalf, in exchange for $10,000 in government funds.

8. One of the defendant's customers was an uncharged co-conspirator ("UCC-2"), who worked at a restaurant in Frederick County, Virginia. UCC-2 initially purchased approximately three ounces of cocaine from the defendant at a time, and eventually increased the amount he was buying to as many as six ounces at a time. The defendant charged UCC-2 approximately $1,300 to $1,400 per ounce of cocaine, and UCC-2 redistributed the cocaine that the defendant distributed to him. UCC-2 was one of the defendant's customers for a period of approximately nine months.

9. On or about February 23, 2022, law enforcement conducted surveillance of the defendant as he left his residence in Fauquier County and drove to the restaurant where UCC-2 worked. There, the defendant went inside the restaurant and distributed a quantity of cocaine to UCC-2. When UCC-2 left the restaurant, law enforcement conducted a traffic stop on UCC-2 and recovered approximately four ounces of cocaine that the defendant had distributed to UCC-2.

10. On or about May 6, 2022, UCC-2 met with the defendant to pay the defendant back for the cocaine that law enforcement had seized on February 23. The defendant informed UCC-2 that the defendant's cocaine source was an individual living in Maryland, and that the defendant

did not want trouble with his supplier because of the cocaine that UCC-2 had lost in the traffic stop.

11. The defendant encouraged UCC-2 to find additional customers to buy cocaine from the defendant. The defendant told UCC-2 to tell his customers to call him (the defendant) and say that they were calling "on behalf of the man with the food" so that the defendant would know that UCC-2 sent them.

12. This statement of facts includes those facts necessary to support the plea agreement between the defendant and the United States. It does not include each and every fact known to the defendant or to the United States, and it is not intended to be a full enumeration of all of the facts surrounding the defendant's case.

13. The actions of the defendant, as recounted above, were in all respects knowing and deliberate, and were not committed by mistake, accident, or other innocent reason.

14. If the defendant breaches the plea agreement, then pursuant to the plea agreement, she waives any rights under Federal Rule of Criminal Procedure 11(f), Federal Rule of Evidence 410, the United States Constitution, and any federal statute or rule in objecting to the admissibility of the statement of facts in any such proceeding.

Respectfully submitted,

Jessica D. Aber
United States Attorney

By: _____
Heather D. Call
Amanda Lowe
Assistant United States Attorneys

**Defendant's signature**: After consulting with my attorney and pursuant to the plea agreement entered into this day between the defendant, Isidro Duran-Velazco, and the United States, I hereby stipulate that the above Statement of Facts is true and accurate, and that had the matter proceeded to trial the United States would have proved the same beyond a reasonable doubt.

Date: _____  *Jose Covarrubias Gonzalez*
Jose Covarrubias-Gonzalez
Defendant

**Defense counsel signature:** I am the defendant's attorney. I have carefully reviewed the above Statement of Facts with him. To my knowledge, his decision to stipulate to these facts is an informed and voluntary one.

Date: _____  _____
John C. Kiyonaga
Counsel for the Defendant

5